The last case on for argument today is Rizzo v. Applied Materials, Inc. et al. Good morning your honors. Well, I was going to say good morning to you Mr. Rizzo, but it's actually afternoon, so. Well, thanks for breaking the ice. All right. A little bit nervous. I've never done this before, but I've got four minutes in reserve. I wrote a speech. I'd like to go through it. It's a complex case, as you know. May it please the court. The district court rejected submissions and will not authorize necessary discovery undermining the district court's ability to make an appropriate dovert ruling compounded falsifies documents by the defendant promoting an inadequate record. Contrary to the district court, ANCA-slash-GPA is well documented that silicate and solvent exposure causes inflammatory responses triggering autoimmunity. Confirmed by epidemiology, multiple journals, and even NIOS confirms that nanoparticles are more toxic within the semiconductor industry supporting the science in the time frames of compounding exposures. As plaintiff's expert, Dr. Wong, explained, odds ratios or relative risk are well above the 2.0 standard and have been confirmed by both parties that the risk is more than double, proving causation. Defense expert, Dr. Hoffman, failed to appraise the court of his prior published conclusions, which undermines his declaration in this matter. Dr. Hoffman confirmed in past publications that statistically significant differences in regard to Wagner's patients have a greater degree of exposure to fumes, insecticides, and particularly airborne matter. Others have suggested the inhalation of grain particles may increase the rise in developing Wagners. Hoffman admits, whereas silica is a well-established cause of pulmonary diseases and nephritis, increasing circumstantial evidence has raised questions about its role in triggering MPA in Wagners, identical to Rizl's medical. Hoffman admits, over 75% of patients in all groups noted environmental exposures to inhaled materials during the year prior of onset. Though the defendant attempted to mislead the district court with incorrect time frames or medical references, he explains why depositions are segments of the record, creating gaps of evidence where summary judgment is not to be awarded. There's an agreement that ANCA-slash-GPAs cause from such exposures. Additionally detailed by Dr. Milosevsky and Dr. Hodgman, records that the district court had access to. As Milosevsky noted, there is considerable literature in our field demonstrating a connection between exposure to silica and the development of GPA. In my opinion, a high degree of acute exposure would prompt a similar mechanism leading to the formation of antibodies. As Hodgman noted, there is some consistency in epidemiology studies that associate the two. Dr. Wang, my expert, Dr. Wang's scientific analysis of review is reliable, plausible, weighted, factual, biologically plausible, and creditable. Supported by in vitro and vivo studies, epidemiology, peer review, and the current opinions of the medical field identifying causation, DOBER neither requires or empowers a trial court to determine which of the several competing scientific theories has best province. What is your understanding? Let's take a second. What is your understanding of why the district court found your expert unreliable? They were being misled about the facts and that the records were becoming gaps. So during the depositions, there were specific questions in science that was being detailed, and then they would come back at the deposition and request a certain type of questioning or saying just to get an answer. But when the science was being detailed, that wasn't given to the  district court. Judge D'Augustino? Yes. And then she confirmed it in document, I believe 206 of their electronic file, that she was not going to accept it and blamed it on us, though the defendant as well never submitted the epidemiology or the medical references, not even the journals or studies for review, which as Justice Stevens dissented, that you have to review these to confirm the credibility of these journals. And it's coincidental that Dr. Garibrand typically just works for defense firms, even in the court case of, I think it would be Milward, Milward or Sandoz, he did the same scenario. He comes down through the facts, but then he changes his conclusion. So his conclusions are always against the science, but the science exists. And that's the hard part here. Even their expert, Dr. Hoffman, who admitted to the science in his book, he identified that the science was advancing according to autoimmunity and immune suppression. So Dr. Wong explained that in the depositions and he clarified it to him, but nobody would accept it. And Dr. Milosevsky, head rheumatologist at Mass General, identified it as well. Dr. Hodgman was one of the first ones who identified it, saying there's epidemiology out there. So as the record was progressing, the answers were coming out. But in the first depositions of the doctors, it was being tailored to negate the true science that Dr. Wong found. Your red light's on, so why don't you take a minute or so and sort of sum up. And you'll have another minute to reply. And of course, we have your brief, so we've read what you have to say already. I just want to say the district court improperly ruled that causation must be supported by prior case law. They did make that statement. To the contrary, a rare illness with high odds ratios within a new industry has not been written and is not a requirement for litigation. Though the science, the law, and the decision by the VA, there's a VA decision there as well, where they concentrated on solvents. And they did it as it was entitled and very probative and great weight. In these orders, I would ask that the CERC be identified because it's part of the cause. And it was interesting to note that the prior court hearing that we heard about the video footage, I had video footage on my incident and the defendant destroyed it. And that's confirmed in the record as well. In labor law, standard of care and I.N. radiation should be noted as well. So in my conclusion to sum this up for my one minute remodel at the end, granting plaintiff's summary judgment or at minimum remanding this matter back to the district court is necessary. Where plaintiff's claims are fully supported with science and law and mortality rates are 300% higher than the general population. The district court may not determine which of several competing scientific theories has best province or take side on questions that are currently the focus of extensive scientific research and debate. And in which reasonable scientists can clearly disagree. Those limits on gatekeeping expressly prohibit judges from usurping the constitutional or the fact finder by deciding which of the two conflicting expert views is more correct. Thank you, Mr. Rizzo. And as we've noted and you've noted, you have a minute for rebuttal after we hear from Ms. Rice. Good morning, your honors, and may it please the court. My name is Amanda Rice and I'm here on behalf of Defendant Appelese, Global Foundries U.S. Inc. and Applied Materials Inc. Mr. Rizzo alleges that he contracted an autoimmune disease called GPA after an alleged chemical exposure at Global Foundries facility. The only question reached below was general. I thought there was no question of the exposure. The question was what the causation is. The court never got that far. They bifurcated proceedings so as to address general causation first. So, you know, in terms of the exposure, we'll take what he alleges in the complaint is true, but there is a dispute as to that. But the general causation question is whether exposure to any substance is recognized as able to cause the disease Mr. Rizzo has. And what is the, you know, we're a federal court and we don't deal with a lot of these tort cases. This is New York law that we're talking about that sets the substantive standard? It is. And what is the law about general causation? What is an element of the plaintiff's case? So the plaintiff has a number of claims. A couple of them were dismissed and then a couple of them are against. The one we're focused on, the issue I thought was that summary judgment was granted because of a failure of general causation. What is the substantive law require with respect to proof of general causation? What says that? Where would I look to find that? I think Amorgianos is the best decision from this court on that case. I can give you a citation if that's helpful, though it's in our brief in a couple of places. It is. It's 303 F3rd 268. It's a fairly detailed discussion. I think the key is it's different from specific causation, which is whether a particular exposure in fact caused a disease. And as it happens in a lot of context, general causation isn't disputed. You know, it's clear perhaps that asbestos, for instance, can cause certain diseases. Here's what troubles me about this case. We don't generally in the law, even in criminal cases, operate on requirements of some kind of absolute certainty. It's beyond a reasonable doubt. It's not beyond any doubt. In civil cases, we're doing the best we can to find facts in a world of uncertainty. Here, what your experts say is this is a world of uncertainty. There is no established cause at all, right? It must be caused by something, but we don't know what it is with any degree of certainty. What we do seem to know from studies that I think are acknowledged by both sides is that there is at least some kind of correlation between at least heavy exposure to silica and over a prolonged period of time and diseases that are not dissimilar in all ways to this. I try to state that as vaguely as possible. What makes it necessary that there be some definite scientific absolute determination that A is the cause of B before a jury can assess whether in the way we would decide anything else, what color the light was in an auto accident case that hard to be sure, but looks like this is the way it was, tilts a little more in that direction. This is not a case where your experts say there is a cause. It's something else. It's not this kind of thing. Couldn't have happened. He loses. His purported experts are just totally out to lunch. It's a question of we don't know what really does this. How certain do we need to be in order to allow this case to go to a fact finder? I think the answer is not certain. There's two standards here. I think the Daubert standard is really the most relevant one, which is to say plaintiff who's represented by counsel below had to come forward with some admissible evidence sufficient for a reasonable fact finder to find that a certain kind of exposure is capable of causing a certain kind of disease. And I agree with your honor that that doesn't have to be to a certainty. In fact, I would go as far as to say there doesn't have to be a published study reaching that conclusion. What Daubert does require, however, is a reliable methodology. And there is such a methodology. It's called the Bradford Hill criteria for looking at a body of literature wherein, and I'm going to rephrase the state of the literature, I would say some studies have found an association between silica and a broader class of diseases. But some studies have found no association affirmatively. And the Bradford Hill criteria would be a way of assessing all of those studies and deciding whether globally the balance of the studies suggests an association or does not? That's correct. And it looks at such things as the strength of the association, its consistency, temporal relationship between the exposure and the disease. There's a good discussion of this by Dr. Gerbrand at page 472 of the appendix, if that's helpful. I'm not even saying that's the only methodology that would work for that. But you have to, what Daubert requires and what the district court is tasked with under Daubert is looking at purported expert testimony and making sure that a scientific methodology was applied to reach the opinion. And did the district court apply something like the Bradford Hill approach and decide that that's why the plaintiff's expert's methodology was inadequate? No, no. To be clear, no. That would be a methodology that an expert could apply, a scientist. Well, yes, but then wouldn't it, if one of your scientists says that, then wouldn't it be incumbent on the district court to say something like, not that, I've redone that analysis. I think you are right because I'm as good a scientist as you are, but this is what the experts have done. And I credit that and I don't think that the plaintiff's experts did the same sort of thing. Correct. I think the issue is the plaintiff's experts did not attempt to do that kind of thing or any other sort of reliable methodology. And so the district court . . . No, I sort of had read the district court's decision as not saying the plaintiff's experts failed to apply the right kind of methodology in deciding whether these various studies that they purported to rely on are persuasive in light of the totality of the literature. I thought the district court was saying that none of those studies show causation in some definite way. I think the district court gave the experts here every benefit of the doubt, which is part of why the opinion is so thorough and detailed. So, for example, with respect to Dr. Wong, the district court looked at his qualifications and said, okay, this isn't someone who does this sort of thing. I get it that the plaintiff's experts' credentials are not the strongest for being able to make these evaluations. Yeah, and so then the district court nevertheless went on to look at, you know, not each individual study, but the experts' methodology, the experts' reasoning. So what Dr. Wong said is, I think a specific substance, nanosilica, for instance, causes GPA. He cited one study for that, and so the district court, in the absence of any other proffered methodology by Dr. Wong, looked at that study and what it said and found that there was too large of an analytical gap. That's the language from Amorgianos. So I think if Dr. Wong had proffered some other methodology, aside from this study shows this thing that I'm concluding, the court could well have evaluated that. I think there just was none, and so the court, in an effort to give every benefit of the doubt here, looked at the studies the experts or the proffered experts cited in support of their claims and explained why they didn't actually support those conclusions. Thank you, Ms. Rice. Thanks. Mr. Rizzo. Thank you. As was just mentioned, you mentioned about the studies. Well, Dr. Wong did note, and it actually kind of mimics the Millward court case, the fact that we don't test on humans and get actual identities, let's put it that way. And Millward identified that just as much. And it's interesting that the odds ratios were 3.5 to 100,000, while my odds ratios rang from 3 to 100,000 for my disease. And secondly, about the epidemiology, the epidemiology was confirmed, and this was one of the journals that was withheld to the last moment, while the other doctors never had this in front of them to testify to. I actually spoke with Mr. Miller. It took them 10 years to provide that document about ANCA. And I mentioned it in my documentation that GPA is the continual word that's being used, while ANCA, ANCA-C is Wagner's disease, which is GPA, which is an AAV. So that's why it's confusing to the lower court, because of the terminology and all these other general studies. One will say Wagner's, one will say GPA, one will say ANCA, one will say AAV. So when the questioning took place, does this confirm Wagner's? No, it says AAV. So there's trickery of the words and terminology. But this was confirmed by seven expert panels. Which one is that again? This is the Miller. That's in the record. Yes, it's referenced. It should, it was one that highly, highly noted that the lower court said it wasn't true, that it described GPA, but she didn't know that GPA is ANCA. She had no acknowledgment of it. But in the records, it does identify it by Dr. Garibrandt that ANCA is GPA. And it's also written in his book. So it's terminology that's being used here. In NanoSilica, that's also been confirmed by NIOSH. So I think looking back on the laws, I think two of the greatest cases that can be morphed together to support my remand is the Millward and Brasher v. Sandoz case. You take these two and you morph them together, you got the answer. It talks about what Justice Lynch just described about, I won't say the odds ratios, but I want to say the odds ratios about the rarities and how come it's not documented. And then secondly, it describes the exact fact that Mrs. Rice was detailing to you that they answered in this, in Millward. It goes right against what she just told you. Thank you. Thank you. Thank you both. We'll reserve the decision in this case. That being the last case on calendar today, I will ask the clerk please to adjourn the court.